IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

DONNETTE H.,

             Plaintiff,

  v.                                   Civil Action No.
                                        3:19-CV-0755 (DEP)

ANDREW M. SAUL, Commissioner of Social
Security,

             Defendant.

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM    PETER A. GORTON, ESQ.
Attorneys at Law
1500 East Main Street
Endicott, NY 13761

FOR DEFENDANT

HON. GRANT C. JAQUITH           CHRISTOPHER L. POTTER, ESQ.
United States Attorney for the     Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on August 19, 2020, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   August 27, 2020
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DONNETTE H.,
                                          Plaintiff,

-v-                                       3:19-CV-755

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
August 19, 2020
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    LACHMAN & GORTON LAW OFFICE
    P.O. Box 89
    1500 East Main Street
    Endicott, New York 13761
    BY: **PETER A. GORTON, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    J.F.K. Federal Building, Room 625
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY: **CHRISTOPHER LEWIS POTTER, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1           (The Court and all parties present by telephone.
2    Time noted:  11:22 a.m.)
3           THE COURT:  Plaintiff commenced this proceeding
4    pursuant to 42, United States Code, Sections 405(g) and
5    1383(c)(3) to challenge an adverse determination by the
6    Commissioner of Social Security finding that plaintiff was not
7    disabled at the relevant times and therefore ineligible for the
8    benefits sought.
9           The background is as follows:  Plaintiff was born in
10   September of 1981.  She is currently 38 years old.  She was
11   34 years of age at the alleged onset of her disability in
12   January of 2016.  Plaintiff stands between 4'8" and 4'10" inches
13   in height and weighs between 126 and 140 pounds depending on the
14   point in the record that you look.
15          Plaintiff lives in Binghamton in a mobile home with
16   her boyfriend and two children who were nine and four years old
17   at the time of the hearing in July of 2018.  She also has an
18   older daughter.  Plaintiff is right-handed.  She secured a GED
19   in 2010.  While she was in school, she was in regular classes.
20   She also has a CNA certification, which she obtained in 2007.
21   Plaintiff has a driver's license and does drive.
22          Plaintiff stopped working on January 2, 2016.  When
23   she was employed, she was in various positions; 2001 to 2005, as
24   a laborer through a temporary agency; from March of 2007 to
25   December of 2007, she was a CNA/certified nurse assistant; she

1  also worked from May of 2006 to October 2010 as a cashier and a
2  prep person in a grocery store; and from May 2015 to
3  January 2016 as a cashier.
4          Plaintiff suffers from several physical conditions,
5  including disc bulges at multiple levels, multilevel
6  degenerative disc disease with mild central canal stenosis, and
7  she's been diagnosed as having fibromyalgia.  She has bilateral
8  carpal tunnel syndrome, which she treats through the use of
9  splints, and headaches.  In February of 2013, she underwent a
10 microdiskectomy at the T11-T12 level.  In February of 2018, she
11 underwent magnetic resonance imaging testing.  That is reported
12 at pages 485 through 487 of the Administrative Transcript.
13         At T10-T11, there was a finding of an intervertebral
14 disc desiccation, a bulging intervertebral disc, mild central
15 canal stenosis, but no significant neuroforaminal stenosis.  At
16 T11 and T12, it was also noted to be a mild bulging
17 intervertebral disc, no significant central canal stenosis, and
18 no significant neuroforaminal stenosis.  At L4-L5, there was a
19 mild disc bulge with facet joint arthropathy and ligamentum
20 flavum hypertrophy, but with no significant central canal
21 stenosis, and mild bilateral neuroforaminal stenosis.  At L5-S1,
22 there was a finding of a Grade 1 anterolisthesis of L5 on S1
23 with an intervertebral disc desiccation and bulging
24 intervertebral disc with posterior central herniation indenting
25 the ventral thecal sac.  Also, there was facet joint arthropathy

1  and mild central canal stenosis, as well as mild bilateral
2  neuroforaminal stenosis.  The plaintiff also underwent earlier
3  MRI testing, it's reported at page 500, and there was disc
4  herniation located at T7-T8 and T9 and T10.
5          Mentally, plaintiff suffers from depression, anxiety,
6  and an adjustment disorder.  For treatment, plaintiff sees Nurse
7  Practitioner Emily Crouse at Lourdes Center for Pain and
8  Wellness.  She has also seen Dr. Aamir Rasheed, a neurologist,
9  and she sees Dr. Jane Hudson for her general treatment.  In
10 terms of mental health, plaintiff did appear at UHS Outpatient
11 Mental Health from May of 2016 to April of 2017 when she was
12 discharged.  She now sees Lourdes Mental Health for treatment.
13         The plaintiff has been prescribed many medications
14 over time for her mental health and physical health conditions,
15 including Gabapentin, Naproxen, Methocarbamol, Lidocaine
16 ointment, Lidocaine patches, Duloxetine for depression,
17 Escitalopram for depression, Baclofen, Cymbalta, Lexapro,
18 allergy medications, and Tylenol, as well as Zantac.
19         Plaintiff's activities of daily living include the
20 ability to groom herself, cook, clean, do laundry, shop, take
21 care of childcare, take care of dogs and cats, she plays music,
22 and plays the guitar.  Plaintiff smokes between one half and one
23 pack of cigarettes per day, as well as medical marijuana that
24 has been prescribed by Nurse Practitioner Crouse.
25         Procedurally, plaintiff applied earlier for

HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
Official U.S. Court Reporter

1  disability benefits.  Those benefits were denied by the
2  Administrative Law Judge's decision in March of 2014.  Plaintiff
3  again applied for Supplemental Security Income or Title XVI
4  benefits on March 31, 2016, alleging an onset date of January 2,
5  2016.  In support of her application, she claimed to suffer from
6  back problems-disc issues, depression, leg problems-numbness and
7  weakness, neck problems-nerve pain, and major headaches.
8           A hearing was conducted on July 5, 2018, by
9  Administrative Law Judge Thomas Cheffins with a vocational
10 expert.  On August 23, 2018, ALJ Cheffins issued an unfavorable
11 decision which became a final determination of the agency on
12 April 30, 2019, when the Social Security Administration Appeals
13 Council denied plaintiff's request for a review.  In doing that,
14 the Appeals Council reviewed new evidence in the form of the
15 medical questionnaire prepared by Nurse Practitioner Emily
16 Crouse on August 29, 2018, that appears at page 8 and 9 of the
17 Administrative Transcript, but found that it would not have
18 altered the outcome.  This action was commenced on June 25,
19 2010, and is timely.
20          In his decision, the ALJ applied the familiar
21 five-step sequential test for determining disability.  At step
22 one, ALJ Cheffins concluded that plaintiff did not engage in
23 substantial gainful activity since the date of application on
24 March 31, 2016.
25          At step two, he concluded that plaintiff does suffer

1   from severe impairments that impose more than minimal
2   limitations on her ability to perform basic work functions,
3   including degenerative disc disease of the lumbar and thoracic
4   spine, status post discectomy T11-T12, cervicalgia,
5   fibromyalgia, and right carpal tunnel syndrome.
6              At step three, the Administrative Law Judge concluded
7   that the conditions do not meet or medically equal any of the
8   listed presumptively disabling conditions set forth in the
9   Commissioner's regulations, specifically considering listings
10  1.02, 1.04, and 1.01/14.06 in connection with fibromyalgia.  The
11  Administrative Law Judge next concluded that plaintiff retains
12  the residual functional capacity to perform light work with
13  exceptions that she can never climb ladders, ropes, or
14  scaffolds, she can occasionally stoop and crouch, and she can
15  frequently handle and finger the right upper extremity.
16             At step four, the Administrative Law Judge concluded
17  that with that residual functional capacity, plaintiff is unable
18  to perform any of her past relevant work.
19             Proceeding to step five, Administrative Law Judge
20  Cheffins noted first that if plaintiff were capable of
21  performing a full range of light work, the Medical-Vocational
22  Guidelines in the regulations, and specifically Grid Rule
23  202.21, would direct a finding of no disability.
24             With the assistance of a vocational expert and a
25  hypothetical posed to that vocational expert that mirrored the

1  residual functional capacity finding, it was determined that
2  plaintiff, at the light work level, could perform as a counter
3  clerk and a bakery line worker, and although it was testified
4  that the Dictionary of Occupational Titles did not address the
5  stooping requirement associated with those two positions, the
6  vocational expert testified based on his expertise she would be
7  capable of performing in those positions notwithstanding the
8  stooping limitation.
9           As you know, the Court's task is limited and applies
10 a very deferential standard to the agency's determination.  I
11 must decide whether correct legal principles were applied and
12 the resulting determination is supported by substantial
13 evidence.  As the Second Circuit noted in *Brault v. Social
14 Security Administration Commissioner* at 683 F.3d 443 from 2012,
15 the substantial evidence standard is stringent.  Substantial
16 evidence is defined as such relevant evidence as a reasonable
17 mind might accept as adequate to support a conclusion.  It is
18 akin to and even more stringent than the clearly erroneous
19 standard which we as lawyers are familiar with.  As the Second
20 Circuit noted, the substantial evidence standard means once an
21 ALJ finds a fact, that fact can be rejected only if a reasonable
22 factfinder would have to have conclude otherwise.
23          The plaintiff has raised three basic contentions.
24 First, that the residual functional capacity, and specifically
25 the physical components of it, are not supported by any medical

1  opinions.  Secondly, the plaintiff complains of the Appeals
2  Council's finding that Nurse Practitioner Crouse's questionnaire
3  would not alter the determination of the Administrative Law
4  Judge.  And third, the step five determination is challenged as
5  not supported because the vocational expert presumably used job
6  numbers that were associated with OES categories that included
7  multiple jobs, some of which plaintiff may not be able to
8  perform, and that it's based on a flawed hypothetical because
9  the residual functional capacity finding is not supported.
10             Turning first to the step five argument, it appears
11 to me that the vocational expert did rely on OES category
12 numbers.  This is a step at which the Commissioner bears the
13 burden of proof.  The burden can, of course, be carried through
14 the testimony of a vocational expert.  There were two jobs
15 identified in the light category in response to a hypothetical,
16 which did mirror the residual functional capacity finding, and
17 the vocational expert identified 115,000 jobs available in one
18 category and 290,000 in another at pages 87 to 88.  The
19 vocational expert testified as to the source of the information
20 and job numbers, including employment quarterly reports, Census
21 Bureau information, and training, education, and experience,
22 which, of course, are proper bases for the vocational expert's
23 opinion.  But, again, he was asked if the numbers correlated to
24 OES categories and he responded yes.
25             I think the matter could and should have been

clarified. I'm not sure I agree that it is malpractice to inquire into or attempt to clarify, but even if the argument was not waived, I find that it is harmless error. The number of jobs cited are greatly in excess of the numbers of jobs that would be required in the 6,000 to 10,000 range to support a finding of the ability to perform work in the national economy.

*Michelle M v. Commissioner of Social Security*, it is found at 2020 WL 495170, a Northern District of New York decision from January 30, 2020, a similar situation where an ALJ's reliance on a vocational expert's identification of over 100,000 positions nationally, even if they came from OES job groups, because it was in excess of 10,000, it was deemed to be harmless error.

My greater concern is the physical components of the residual functional capacity finding in this case. Pivotal to any determination of disability is a finding of a claimant's residual functional capacity, which represents the range of tasks she is capable of performing notwithstanding the impairments at issue. An RFC determination is informed by consideration of all of the relevant medical and other evidence. To properly ascertain a claimant's RFC, an ALJ must assess plaintiff's exertional capacities such as her ability to sit, stand, walk, lift, carry, push, and pull. The ALJ must also consider any nonexertional limitations or impairments, including those that result in postural and manipulative limitations.

1  When rendering an RFC determination, the ALJ must specify those
2  functions that the claimant is capable of performing.
3  Conclusory statements concerning her capabilities will not
4  suffice.  And, of course, ultimately, any RFC determination must
5  be supported by substantial evidence.
6           In this case, the plaintiff was deemed by the
7  Administrative Law Judge to have the capability of performing
8  light work with some alterations.  Light work is defined under
9  20 C.F.R. Section 404.1567(b) as follows:  Light work involves
10 lifting no more than 20 pounds at a time with frequent lifting
11 or carrying of objects weighing up to 10 pounds.  Even though
12 the weight lifted may be very little, a job is in this category
13 when it requires a good deal of walking or standing, or when it
14 involves sitting most of the time with some pushing and pulling
15 of arm or leg controls.  To be considered capable of performing
16 a full or wide range of light work, you must have the ability to
17 do substantially all of these activities.  If someone can do
18 light work, we determine that he or she can also do sedentary
19 work, unless there are additional limiting factors such as loss
20 of fine dexterity or inability to sit for long periods of time.
21          There's no question that there is not a single
22 medical opinion other than Nurse Practitioner Crouse's, which
23 we'll deal with in a moment, in the record that relates to
24 plaintiff's ability to perform functions such as standing,
25 walking, sitting, lifting, and carrying.  The only position in

1  the record or opinion in the record that speaks to those
2  characteristics is Exhibit 3A, and the physical portion of that
3  exhibit is signed by a single decisionmaker whose opinion is not
4  entitled to any weight.
5         I recognize that in a simple case, it is clear that
6  an Administrative Law Judge may make a residual functional
7  capacity determination without support from a medical source.
8  This, however, in my view, is not a simple case.  Plaintiff
9  suffers from mutli-level degenerative disc disease, which is
10 well supported, including by MRI testing, and also has a
11 diagnosis of fibromyalgia.  It's undeniable that fibromyalgia is
12 an illusive disease which may or may not result in a finding of
13 disability.  The diagnosis does not translate into an automatic
14 finding of disability.  After all, it is not the presence of a
15 medical condition, but rather its resulting limitations that
16 inform the question of whether a plaintiff is under a
17 disability.
18        Undeniably, fibromyalgia is recognized as a
19 potentially severe impairment that may support a claim of
20 disability under the act, in *Green-Younger v. Barnhart,* 335 F.3d
21 99 at 108, a Second Circuit decision from 2003.  It is also true
22 that by its very nature, fibromyalgia is not always readily
23 susceptible to detection or verification through clinical
24 testing or other objective means, as the Second Circuit noted in
25 *Green-Younger*.  Despite its illusiveness and potentially

1  debilitating effects, fibromyalgia, like many medical

2  conditions, is one which may be, but is not necessarily, so

3  limiting as to qualify as disabling under the act, *Coyle v.*

4  *Apfel*, 66 F. Supp. 2d 368 at 376-77, a decision from Judge Hurd

5  in the Northern District of New York in 1999.

6         In this case, I recognize the Commissioner's argument

7  that it is plaintiff's burden to establish her limitations, and

8  she can carry that burden in a variety of ways, including

9  through her testimony.  She testified about her inability to

10 stand or sit for more than ten minutes.  There is also evidence

11 in the record that supports her degenerative disc disease

12 complaints.  Clearly, if Nurse Practitioner Crouse's medical

13 source statement was considered, it would support or buttress

14 plaintiff's claims concerning her inability to lift, her need to

15 change positions, her inability to stand or walk for long

16 periods of time, and her limitations on lifting.

17        In my view, this is a case where the Administrative

18 Law Judge manufactured an RFC finding out of whole cloth,

19 playing doctor, and not relying on any medical opinions.  This

20 case is extremely similar to the decision issued by Chief

21 Judge Suddaby in *Charland v. Commissioner of Social Security*,

22 2016 WL 1117515 from March of 2016, where, citing Second Circuit

23 authority, Chief Judge Suddaby noted that an ALJ is not

24 permitted to substitute his own expertise or view of the medical

25 proof for the treating physician's opinion or for any competent

1  medical opinion.  Moreover, an ALJ cannot assess a plaintiff's
2  RFC based on the ALJ's own interpretation of the medical
3  evidence.  Judge Suddaby did go on to recognize that where
4  medical evidence shows relatively little physical impairment, an
5  ALJ can permissively render a common sense judgment about
6  functional capacity even without a physician's assessment.
7          In this case, however, the ALJ recognized plaintiff's
8  degenerative disc disease at multiple levels and fibromyalgia as
9  severe at step two.  This is not a simple case and there was
10 simply no basis for the ALJ to assess plaintiff's ability to
11 lift, stand, need to change positions, work pace, or attendance.
12         So in conclusion, I find that the residual functional
13 capacity finding in this case is not supported and, therefore,
14 the step five determination which relied on a hypothetical that
15 was based on the RFC finding cannot stand, and, therefore, the
16 step five determination is not supported by substantial
17 evidence.  I don't find it necessary to reach the new evidence
18 issue because of my determination.  I don't find persuasive
19 evidence of disability.  I think this is a situation where a
20 remand is required in order to obtain some medical opinions
21 concerning plaintiff's physical capabilities, so I will grant
22 judgment on the pleadings and order remand of the matter without
23 a directed finding of disability.
24         Thank you both for excellent presentations.  I hope
25 you stay safe in these interesting times.

```
 1              MR. GORTON:  Thank you, your Honor.
 2              MR. POTTER:  Thank you, your Honor.
 3              (Time noted:  11:48 a.m.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                CERTIFICATE OF OFFICIAL REPORTER
 3
 4
 5          I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 6  NYRCR, Official U.S. Court Reporter, in and for the United
 7  States District Court for the Northern District of New York, DO
 8  HEREBY CERTIFY that pursuant to Section 753, Title 28, United
 9  States Code, that the foregoing is a true and correct transcript
10  of the stenographically reported proceedings held in the
11  above-entitled matter and that the transcript page format is in
12  conformance with the regulations of the Judicial Conference of
13  the United States.
14
15          Dated this 27th day of August, 2020.
16
17       x Hannah F. Cavanaugh
18          HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
19          Official U.S. Court Reporter
20
21
22
23
24
25
```